## SAX *v.* TAYLOR IRON-WORKS.

*(Circuit Court, D. New Jersey. March 30, 1887.)*

1. PATENTS FOR INVENTIONS—VALIDITY—ANTICIPATION.

   Letters patent No. 249,102, issued to John K. Sax, November 1, 1881, for improvements in the manufacture of car-wheels, the claims of which are for a car-wheel consisting of a flanged or grooved rim, having a recess at the inner side, and a solid metal body fused or welded to said rim by plain or dovetail joints, are anticipated by the Sax & Ker patent of 1869, and its reissue of 1870 and 1877, the claims of which cover a car-wheel composed of a cast-iron body and steel rim, the two parts being united by means of a fused tongue and recess joint, as described in the patent of November 1, 1881.

2. SAME—INVENTION.

   The change in the method of combining the body and rim of the wheels, by transferring the groove or recess to the rim, and embracing the body of the wheel, instead of having the groove or recess in the body and embracing the rim, does not involve invention. On authority of *Hollister* **v.** *Benedict & Burnham Manuf'g Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717.

In Equity. Suit for infringement of letters patent.

*David A. Burn*, for complainant.

*A. G. Rishey & Son*, for defendant.

BUTLER, J. The suit is for infringement of patent No. 249,102, issued to plaintiff, November 1, 1881, for "improvements in the manufacture of car-wheels," the claims of which are as follows:

"*First*, a car-wheel, consisting of a flanged rim, having a recess at the inner side, and a metal body, fused or welded to said rim, substantially as set forth;

*second*, the combination in a wheel of the hammered or rolled metal rim, having inward projecting side flanges, and a cast metal body, fused to said rim as specified."

The only difference between these claims is that the first calls for a plain tongue-and-groove joint, while the second calls for a dovetail joint.

The defense set up is twofold,—anticipation and non-invention. The burden of proof is on the defendants. To sustain the first branch, (anticipation,) several patents have been introduced showing the prior state of the art. There is no difficulty about this part of the case. Composite car-wheels, having cast-iron bodies and steel-rims, are old. Such wheels, constructed with transversely curved projection on the inner side of the tread, (to keep them in place on the rail,) the projection being in some instances a part of the rim, and in others a part of the body, the rim and body being united by a fused tongue-and-groove joint, sometimes the groove being on the outer edge of the body, embracing the rim, as in the Sax and Ker patent of 1877, and sometimes on the inner side of the rim, embracing spokes which form a part of the body, as in the Finch patent of 1849, and in others embracing a tongue connected with the body, though made separately, as in the Miles patent of 1875, had been in use for a long time. This state of the art is admitted by the plaintiff, who claims no more (at present) than the flanged or groove rim, and solid metal body, fused or welded into it, the joint being either plain or dovetail. The claim is, indeed, limited to this method of uniting the body and rim. All else is conceded to be old. Was this anticipated?

The plaintiff and one Ker, in 1869, procured a patent for improvements in car-wheels, which was successively reissued in 1870 and 1877, the claims of which are as follows:

(1) A wheel in which the body is of cast-iron, and the tread of cast-steel, embedded in and welded to the cast-iron body, as set forth; (2) a wheel having a cast-iron body, welded to a rolled or hammered cast-steel band, tire, re-enforce, or tread, substantially in the manner and for the purpose set forth; (3) a wheel having a body and part of the periphery of cast-iron, and the wearing portion or tread of cast-steel, fused to the iron, as set forth; (4) a wheel having part of the periphery of cast-iron, and the wearing part or tread of cast-steel, fused to a cast-iron body, and extending to and forming the wearing portion of the flange, as specified; (5) a wheel having the body and part of the periphery of cast-iron, and the wearing portion or tread of cast-steel, a part of which is overlapped, being fused or welded together substantially as and for the purpose set forth; (6) a car-wheel having a cast metal body and hub, and sleeve or softer metal inserted in the axle opening, and welded to the body, as set forth.

Are not these claims broad enough to cover every description of car-wheel composed of a cast-iron body and steel rim, the two parts being united by means of a fused tongue and recess joint? The plaintiff seems to have so intended and regarded them, as appears from his circulars and advertisements, as well as from his method of constructing the wheels, which varies from that shown by his specifications and drawings. If he did thus intend and construe them, he should be held to it now. Having dealt with the public, licensees, and purchasers of the wheels on

the basis of the claims so construed, he should not be allowed to take advantage of the fact that the invention did not warrant it, if this is so. Can it be doubted that he would have appealed to these claims, and insisted on this construction, if another had manufactured wheels such as are described in his patent of 1881? The wheels manufactured under the patent of 1877, as before suggested, vary seriously from the wheels described in it; having the transverse curved projection on the rim, (as called for in the patent of *1881,*) although in the former patent this projection is described as a part of the iron *body.* The only remaining difference between the wheels manufactured under the former and latter patents, consists (as before stated) in the fact that in the former the recess is in the body, and embraces the rim, while in the latter it is in the rim, and embraces the body; that is, that in the one the rim is projected into the body, while in the other the body is projected into the rim. This difference does not seem to be greater than the departure made from the terms of the former patent in manufacturing wheels under it.

Suppose, however, the claims of the Sax and Ker patent are not so broad as the plaintiff intended and construed them to be, and that the plaintiff should not be held to this intention and construction, still, are they not broad enough to cover the wheels described in the patent of 1881? As we have seen, the difference between the wheels manufactured under the former patent and those described in the latter is very slight, embracing no more than a reversal of the tongue-and-recess forming the joint. This difference contains nothing new. The result of combining the body and rim is not changed. Why, therefore, should not the patent of 1877 be held to cover it? The most that can be claimed is that the result is improved. Even this is questioned and open to doubt. But such improvement of the result (as we shall directly see) would not be important to this inquiry. Others than the plaintiff and Ker had long been engaged in the manufacture of similar wheels. The patent to Finch, of 1849, while it did not describe a wheel with solid iron body and steel rim, did describe the identical manner of connecting the rim with spokes forming a part of the body, here involved. The rim was recessed precisely as described in the patent of 1881, and the spokes fitted into it, forming a dovetail joint. The Miles patent of 1875 exhibits a similar method of uniting the body and rim. The joint is not identical with the plaintiff's, but in principle appears to be the same. The body, as well as the rim, are recessed, and the tongue, made separately, fitted into each. The subject need not be pursued. In our judgment the plaintiff was anticipated.

Suppose, however, he was not, does the matter claimed embrace invention? Its utility, as we have seen, is seriously questioned. There is testimony both ways. It does not appear that any disadvantage was experienced from the former method of combining the body and rim, that the joint or wheel ever gave way or was defective. The plaintiff's own testimony (contained in circulars and advertisements) to its excellence would seem to leave no room for doubt that it did not need improvement. Now, however, he, as well as experts called by him, sees great

improvement in the new wheel. It is somewhat significant that the alleged invention was not made until the monopoly secured by the patent of 1877 was approaching its end. If it be granted, however, that the change is useful, this would not help the plaintiff under the circumstances. Utility does not establish invention. Without it, of course, no invention, however ingenious, is patentable. There must be both utility and invention. Great utility may have some bearing on the question of invention. In such case, less evidence may establish its existence. Yet great utility sometimes results from changes in mechanical devices which embrace no invention. It is only necessary to cite *Hollister v. Benedict, etc., Manuf'g Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717, to present a striking example of this. There the construction of the revenue stamp involved, embraced both utility and novelty. This was admitted. The utility was conceded to be very great, and the novelty exhibited much ingenuity. Yet the court held that no invention was shown, and consequently overturned the patent. In the light of this case, it seems quite clear that the change in the method of combining the body and rim of the wheels here involved, did not require invention. As we have seen, it was very slight, and produced no new result. If experience developed any defect in the wheel of Sax and Ker, or difficulty in constructing it, which could be overcome by transferring the groove to the rim and tongue to the body, it seems plain that any intelligent mechanic employed about the work must have seen this, and been able to make the change. Much more, we think, could have been urged in support of the revenue stamp patent than can be said for the plaintiff's.

A decree must be entered for the defendant with costs.